RHODE ISLAND HOSPITAL TRUST CO., Trustee, *vs.* HENRY DUNNELL *et al.*

JUNE 29, 1912.

PRESENT:   Johnson, Parkhurst, and Sweetland, JJ.

*(1)   Trusts.   Powers.   Wills.*

A fund was left to a trustee to pay over the income to X. for her life and upon her death to stand seized "to such uses and in such manner and for such persons as such deceased shall by her last will declare and appoint concerning the same; and in default of such will then in trust for such persons as shall be the then heirs at law of such deceased, of my blood according to the statutes of descent then in force in said State of Rhode Island, such persons to take in the proportions prescribed by the same statutes."

X. deceased leaving a will containing no reference to the power of appointment or to the fund, but containing a residuary clause bequeathing "all the rest, · residue and remainder of my estate and property of which I may die seized or possessed or to which I may be entitled, whether real or personal:"—

*Held*, that, under Gen. Laws, 1896, cap. 203, § 9 (now Gen. Laws, 1909, cap. 254, § 9), "a bequest of the personal estate of the testator or any bequest of personal property described in a general manner, shall be con-

strued to include any personal estate or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will," the bequest included the personal estate over which she had the power of appointment, and operated as an execution of the power.

*(2)   Statutes.   Following Foreign Construction.*

Where a foreign statute has received a definite construction prior to its adoption in this State, the construction given to it in the jurisdiction of its origin will also be adopted when the statute itself is copied.

*(3)   Conflict of Laws.   Wills.   Powers.*

While the law of the domicile of the donor controls as to the execution of the power by the donee, the fact that the will giving the power was made and took effect before a change in the statutes, is immaterial, for where the will of the donor did not specify that the power should be executed only by a special form of will, the legislature can determine the construction of a later will and give it the effect of executing a previously granted power.

BILL IN EQUITY for instructions.   Certified under Gen. Laws, 1909, cap. 289, § 35.

JOHNSON, J.   This is a bill in equity for instructions brought by the Rhode Island Hospital Trust Company as trustee under the will of Jacob Dunnell, late of Pawtucket, deceased, certified to this court under Gen. Laws, 1909, cap. 289, § 35.

By the will of said Jacob Dunnell, who died in May, 1886, one-fourth of certain personalty was bequeathed to the complainant in trust to pay the net income to Sophie B. Denny, a daughter of the testator, during her lifetime and upon her decease to stand seized of the fund "to such uses and in such manner and for such persons as such deceased shall by her last will and testament declare and appoint concerning the same; and in default of such will then in trust for such persons as shall be the then heirs-at-law of such deceased, of my blood according to the statutes of descent then in force in said State of Rhode Island, such persons to take in the proportions prescribed by the same statutes."

Sophie B. D. Denny died in May, 1910, a resident of New York city, leaving a will containing no reference to

said power of appointment or to the fund in the possession of the complainant, but containing the following residuary clauses:

"Fifth. I give, devise and bequeath to my said husband, John T. Denny, one-half of all the rest, residue and remainder of my estate and property, of which I may die seized or possessed, or to which I may be entitled, whether real or personal.

"Sixth. I give, devise and bequeath the other half of such rest, residue and remainder as follows:—One-third to my son Thomas Denny, one-third to my daughter Maude D. Denny, and the remaining third as follows:—to wit:— one-half thereof to my son, Thomas Denny, to be used as he may think for the best interests of such of his children as may survive me, but without imposing any trust in respect thereto, and the other half thereof to my grandson, Francis C. Dale, if he shall survive me; but if he shall die before me, then such portion shall fall into and be distributed as a part of my residuary estate as hereinbefore provided."

The question presented is whether these residuary clauses of the will of Sophia B. D. Denny operated to exercise the power of appointment given her by the will of Jacob Dunnell. The further question has been argued whether, if the power was not exercised, the trust fund held by the complainant now belongs exclusively to the children and issue of Mrs. Denny or to all the heirs of Jacob Dunnell.

From the decisions of this court it is clear that under the law of this State as it stood prior to the passage of cap. 203, Sec. 9, Gen. Laws, R. I. 1896, the will of Mrs. Denny would not have exercised the power of appointment given her by said will of Jacob Dunnell. *Matteson* v. *Goddard*, 17 R. I. 299; *Cotting* v. *De Sartiges*, 17 R. I. 668; *Mason* v. *Wheeler*, 19 R. I. 21.

Thus in *Mason* v. *Wheeler*, 19 R. I. 21, at page 22, Matteson, C. J., says: "The rule in relation to the execution of powers, as stated by Mr. Justice Storey, in *Blagge* v. *Miles*, 1 Story, 446, which may be regarded as a leading case in this

country on the subject, is that if the donee of the power intends to execute, and the mode be in other respects unexceptionable, the intention, however manifested, whether directly or indirectly, positively or by implication, will make the execution valid and operative; but the intention must be so apparent and clear that the instrument is not fairly susceptible of any other interpretation. If, considering all the circumstances, the intention be doubtful, the doubt will prevent the instrument from being deemed an execution of the power. It is not necessary, however, that the intention to execute should appear by express terms or recitals in the instrument; it is sufficient if it appears by words, acts or deeds demonstrating the intention. In the case referred to three classes of cases are enumerated which have been held to be sufficient demonstrations of an intended execution of a power; 1, where there has been some reference in the will or other instrument to the power; 2, a reference to the property which is the subject on which the power is to be executed; 3, where the provision in the will or other instrument executed by the donee of the power would otherwise be ineffectual or a mere nullity; in other words, would have no operation except as an execution of the power."

In the case at bar it is admitted that there was other property of Mrs. Denny which passed by the residuary clauses and that a general residue was bequeathed by said residuary clauses without description of property and containing no reference to the power.

Cap. 203, § 9, Gen. Laws, 1896, reads as follows:

"Sec. 9. A general devise of the real estate of the testator, or of the real estate of the testator in any place or in the occupation of any person mentioned in his will, or otherwise, described in a general manner, shall be construed to include any real estate or any real estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will; and in like manner a

bequest of the personal estate of the testator or any bequest of personal property described in a general manner, shall be construed to include any personal estate or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will." This section is a literal copy of Sec. 27 of the English Wills Act, 1 Vict. c. 26, and has remained in the statutes unchanged, being now Section 9, cap. 254, Gen. Laws, 1909.

The decisions of this court cited *supra* were in accord with the decisions of the English Courts made prior to the passage of the Wills Act. Denn. Dem. *Nowell* v. *Roake*, 6 Bing. 475, 478; *Andrews* v. *Emmot*, 2 Bro. 297; *Jones* v. *Curry*, 1 Swanst. 66.

In the first of these cases, Alexander C. B., giving the unanimous opinion of the judges to the House of Lords, says: "There are many cases upon this subject, and there is hardly any subject upon which the principle appears to have been stated with more uniformity, or acted upon with more constancy. They begin with Sir Edward Clere's case, in the reign of Queen Elizabeth, to be found in the sixth report, and are continued down to the present time; and I may venture to say, that in no instance has a power or authority been considered as executed unless by some reference to the power or authority, or to the property which was the subject of it, or unless the provisions made by the person entrusted with the power would have been ineffectual— would have had nothing to operate upon, except it were considered as an execution of such power or authority."

It seems to have been uniformly held that the English law upon the subject was changed by the section of the Wills Act above cited and that a general residuary clause of either real or personal property will now execute the power, although such clause contains no reference to the power and although the extrinsic facts before regarded as necessary are entirely absent. Spooners Trust. 2 Sim. N. S. 129 (1851);

*Hutchins* v. *Osborne*, 4 K. & J. 252; *Thomas* v. *Jones*, 2 J. & Hem. 475; *Scriven* v. *Sandom*, 2 J. & Hem. 743 (1862); In re Powell's Trusts, 39 L. J. Ch. 188; *Boyes* v. *Cook*, L. R. 14 Ch. Div. 53; In re Clarke's Estate, L. R. 14 Ch. Div. 422; *Freme* v. *Clement*, L. R. 18 Ch. Div. 499; *Holyland* v. *Lewin*, L. R. 26 Ch. Div. 266.    See, also, *Wilday* v. *Barnett*, L. R. 6 Eq. 193.

The English Statute had thus received a definite construction long prior to its adoption in this State, and it is a general rule that where a foreign statute has been so construed, the construction given to it in the jurisdiction of its origin will also be adopted when the statute itself is copied.

Thus DURFEE, C. J., in *Sayles* v. *Bates*, 15 R. I. 342, at 344, citing Massachusetts decisions upon the statute there under consideration said: "Our statute was borrowed from the Massachusetts statute, and should be construed the same way, unless there is some strong reason for construing it differently." STINESS, J., in *Miller* v. *Coffin*, 19 R. I. 164, 168; "When a statute is adopted which has already received a judicial construction, it is to be presumed that it was adopted in view of such construction." See, also, *In Re O'Connor*, 21 R. I. 465.

But if the Wills Act had not been construed by the English cases, it would still be evident that the law has been changed by the statute.   Before the enactment of the statute in question, the rule was "that if the donee of the power intends to execute, and the mode be in other respects unexceptionable, the intention, however manifested, whether directly or indirectly, positively or by implication, will make the execution valid and operative; but the intention must be so apparent and clear that the instrument is not fairly susceptible of any other interpretation.   If considering all the circumstances, the intention be doubtful, the doubt will prevent the instrument from being deemed an execution of the power." *Mason* v. *Wheeler, supra.*   By the statute, however, "a bequest of the personal estate of the testator or any bequest of personal property described in a general

manner, shall be construed to include any personal estate or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will." The language of the bequest in Mrs. Denny's will being "all the rest, residue, and remainder of my estate and property, of which I may die seized and possessed, or to which I may be entitled, whether real or personal," such bequest will include any personal estate which she may have power to appoint in any manner she may think proper, and will operate as an execution of such power, unless a contrary intention shall appear by the will. If this is not so the statute is without effect.

In several of the cases cited, *supra* considerable stress was laid upon the final words of the statute, "unless a contrary intention appear by the will." Thus Cotton, L. J., in *Boyes* v. *Cook*, at page 57, "in my opinion that section applies unless a contrary intention appears by the will, whether the will is made before or after the creation of the power. We have to look only at the will for a contrary intention, and the distinctions made by the settlement cannot be said to be a contrary intention appearing by the will." Wood, V. C., in *Scriven* v. *Sandom*: "There is no contrary intention within the meaning of the Statute, unless you find something in the will inconsistent with the view that the general devise was meant as an execution of the power. It would not be a safe rule to proceed upon, to pick out little circumstances, and infer from them whether the testator had or had not in his mind the intention of exercising the power; there ought to be shown something which can fairly be described as inconsistent with such an intention. The cases upon dower have some bearing on the point, where it is always held that the dower attaches in the absence of some positive inconsistency between the gifts contained in the will and the claim of dower. Other analogies of the same kind may be suggested, and they all tend to the conclusion that the only

safe rule for discriminating between mere conjecture and the contrary intent required by the statute is to inquire whether there is anything in the will inconsistent with the notion that the residuary bequest is meant to operate as an execution of the power."

The statute of New York, Laws of 1897, Vol. 1 Ch. 417, is in somewhat different terms from our statute and is as follows: "Sec. 6. Power To Bequeath Executed By General Provisions In Will. Personal property embraced in a power to bequeath, passes by a will purporting to pass all the personal property of the testator; unless the intent, that the will shall not operate as an execution of the power, appears therein either expressly or by necessary implication."

The substance of this statute is the same as that of the English and Rhode Island statutes. And long before the enactment of this statute expressly extending the principle to personal property, the statute applying in terms to real property had been extended to personal property by the decisions of the New York Court. *N. Y. Life Ins. Co.* v. *Livingston*, 133 N. Y. 125; *Lockwood* v. *Mildeberger*, 159 N. Y. 181.

In the latter case, the court, Parker, Ch. J., at p. 185, says: "It was the rule of the common law that whether a particular disposition should be treated as an execution of a power was a question of intention, and that the several provisions of a will should be carefully considered for the purpose of ascertaining whether the party really meant to execute the power or not. (4 Kent's Com. 335; *White* v. *Hicks*, 33 N. Y. 393.) The common law rule, however, has been changed by legislative enactment. By Section 126 of the Statute of Powers, now Section 156 of the Real Property Law (L. 1896, ch. 547), it is provided that 'lands embraced in a power to devise, shall pass by a will purporting to convey all the real property of the testator, unless the intent that the will shall not operate as an execution of the power, shall

appear, expressly or by necessary implication.'     (1 R. S. 737.)

"It was held by this court in *Hutton* v. *Benkard* (92 N. Y. 295), that the rule laid down in Section 126 (*supra*), touching the execution by will of a power as to real estate, should be applied to personal estate also, and it follows, therefore, that it is the law of this state that by the residuary clause, by which Mrs. Mildeberger gave to her husband all the rest, residue and remainder of her estate, she executed the power of appointment given to her by her grandmother's will, unless it appears expressly, or by necessary implication from the language of the will, that it was not her intent that the will should operate as an execution of the power.   It is not pretended that she expressed an intent that the residuary clause should not operate as an execution of the power, nor do we think that it appears by necessary implication.   Such an intent is not to be implied from the fact that no reference was made to her grandmother's will, or to the power of appointment therein conferred upon her, for the disposition of all her own property operated under the will as an exercise of such power of appointment.   The omission of all reference to it, therefore, does not imply an intent not to execute the power.   The basis for a necessary implication that it was not her intent to execute the power must, therefore, be found in some other provision than that which under the will operates as an execution of the power.   In examining the will in the light of the grandmother's will, and the circumstances surrounding Mrs. Mildeberger at the time of the execution of her will, it will not suffice to indulge in assumptions, for the law requires that the intent not to execute the power must appear either expressly or by necessary implication.   Necessary implication results only where the will permits of no other interpretation.   Necessary is defined to mean: 'Such as must be;' 'Impossible to be otherwise;' 'Not to be avoided;' 'Inevitable.'   The intent not to execute the power, therefore, must not be implied unless it so clearly appears that it is not to be avoided."

Counsel for Henry Dunnell *et al* contend that Section 9 of Chapter 254 of the General Laws of 1909, has no application, and argue as follows: "The Dunnell will having been executed in 1883, and the testator having died in 1886, and the Denny will having been executed in 1908, and the testatrix having died in 1910, we have a case where the law in force at the *time* of the execution of the will of the donee of the power differs from the law in force at the time of the execution of the will of the donor.

(3)    "Where the law in force at the *place* where the donor has his domicile differs from the law in force at the place where the donee has his domicile, the law of the domicile of the donor controls as to the execution or non-execution of the power. *Lane* v. *Lane,* 4 Pennew. (Del.) 368; *Sewall* v. *Wilmer,* 132 Mass. 131; *Bingham's Appeal,* 64 Pa. St. 345; *Lawrence's Estate,* 136 Pa. St. 354, 363; *Cotting* v. *De Sartiges,* 17 R. I. 668.

"In *Sewall* v. *Wilmer* the court says at pages 136 and 137: 'It is true that, as to personal property at least, the construction and effect of a will, and the distribution thereby made of the testator's estate, are to be governed by the law of his domicile.  But the property of which Mrs. Wilmer has a power of appointment is not her property, but the property of her father; and the instrument executed by her takes effect, not as a disposition of her own property, but as an appointment of property of her father.  The domicile of the testator whose property is in question is therefore the domicile of her father.  .  .  .  She must be presumed to have intended that her will should have the effect, by way of appointment, attributed to it by the law of the only place in which it could be made operative as such.'

"In Bingham's Appeal the court says: 'It is manifest that no possible judicial interpretation of the words 'my personal estate' can make them mean the estate of another. It is simply a legal effect or operation of the law of statutory construction which can do so.  But where the situs both of the will containing the power, and of the property subject

to it lies beyond the domain of Parliament, it is evident that the statutory construction of the instrument of execution can have no operation upon it. That would be to subject Pennsylvania rights to English dominion. Whether a power contained in a Pennsylvania will over Pennsylvania property has been duly executed, is evidently a question of Pennsylvania law, and not that of a foreign country having no jurisdiction.'

"In *Cotting* v. *DeSartiges* our own court says: 'It is not the fact of the donor's ownership of the property which points to the law of this State as the criterion, but the fact that her will is the controlling instrument in the disposition of the property.'

"Similarly the legality of the disposition made by the donee is governed, not by the law of his domicile, but by the law of the domicile of the donor of the power. *In re Bald*, 66 L. J. Ch. N. S. 524; *Pouey* v. *Hordern* (1900) 1 Ch. 492; *In re Megret* (1901) 1 Ch. 547.

"In *Pouey* v. *Hordern* the court says at page 494: 'The execution of such a power does not bring the appointed property into the will of the appointee at all, but operates as a nomination of the persons whose names are to be inserted in the settlement as entitled in remainder in lieu of the power of appointment.'

"Even in the matter of determining whether the instrument executed by the donee is or is not a will, it is held that the instrument must be executed according to the formalities required by the law of the domicile of the donor. *Blount* vs. *Walker*, 28 S. C. 545; *In re Kirwan's Trusts* 25 Ch. Div. 373; *Hummel* vs. *Hummel* (1898) 1 Ch. 642; *In re D'Este* (1903) 1 Ch. 898; *Barretto* vs. *Young* (1900) 2 Ch. 339; *In re Scholefield* (1905) 2 Ch. 408.

"All of the above cases are concerned with a difference in the place of the execution of the donor's will and the donee's, rather than with a difference in time. But the principle of all the cases (and it is nowhere more distinctly stated than in the Rhode Island case) is that since the will

of the donor is the controlling instrument the law *applicable to the will of the donor* governs in determining whether the will of the donee executes the power.    The Dunnell will controls the Denny will and therefore the law governing the Dunnell will governs the Denny will.    If this be the true principle it applies equally well to a difference in time as to a difference in place, *with this distinction, that if the law applicable to the donor's will has been changed before the will of the donee goes into effect it is the later law which will prevail. It appears to be the contention of the Denny family that this is exactly what has occurred here by the enactment of Section 9 of Chapter 254 of the Laws of 1909, passed originally in 1896.*"

The italics are ours.    Counsel proceeds:    "The complete answer to this contention is that Section 45 of the same Chapter provides that 'this chapter and the provisions thereof shall not extend to any will made and executed prior to the first day of February, eighteen hundred ninety-six, . . .   but the law in force at the time of the execution of such will made and executed prior to said date, shall govern the same.'    It is no doubt competent for the legislature to pass an act affecting wills already made (*Langley vs. Langley*, 18 R. I. 618), and even affecting wills that have gone into effect (*Smith vs. Hall*, 20 R. I. 170), but it is expressly declared that Section 9 of Chapter 254 shall not have that effect."

The cases cited by counsel in the above argument as to the controlling power of the law of the domicile of the donor are in point.    It is well settled that the law of the domicile of the donor controls as to the execution of the power by the donee. That the law of the domicile of the donor at the *time* of the execution of his will is to control as to the execution of a power of appointment given by said will, to the exclusion of the law of said domicile at the time of the execution of the power is an entirely different proposition.

There would seem to be no doubt upon principle that the fact that Mr. Dunnell's will giving the power was made and took effect before the statute can make no difference.    The

statute deals not with the creation of the power, but with its execution.. Mr. Dunnell's will did not specify that the power should be executed only by a special form of will, but by will generally and the legislature can determine the construction of a later will and give it the effect of executing a previously granted power. Section 34 of the Wills Act provides "that this act shall not extend to any will made before the first day of January, one thousand eight hundred and thirty-eight." This provision did not prevent the English courts from holding that powers created prior to the Wills Act could be executed according to its provisions. In the following cases the instrument granting the power preceded the statute by which the later will was construed. *Hutchins* v. *Osborne*, 4 K. & J. 252, *Turner* v. *Turner*, 21 L. J. Ch. 843, *Freme* v. *Clement*, L. R. 18 Ch. Div. 499.

Counsel also contend that the bequest is not within the terms of the statute, and argue that: "Even if Section 9 of Chapter 254 were applicable to the Denny will it is submitted that the words of the will do not bring it within the terms of the statute. The power is executed only by a bequest 'of the personal estate of the testator' or of property 'described in a general manner.' It is evident that there is no property here 'described in a general manner.' To refer to property as the residue 'of my estate and property, of which I may die possessed, or to which I may be entitled' may serve to identify it, but the words are not descriptive; and if those words were to be regarded as a description they constitute a misdescription when applied to property over which the testatrix has only a power of appointment. As is later pointed out, she was not 'possessed of' or 'entitled to' the fund held by the complainant as trustee.

"But it is the phrase referring to bequests 'of the personal estate of the testator' that is the dangerous one. The statute is written in the third person and wills are, perhaps invariably, written in the first person. In translating the statutory words 'the personal estate of the testator' into a will they necessarily become 'my personal estate;' and it is

very generally and properly held in England that a bequest of 'my property' or of 'all my property' or 'residue of my property' executes a power by virtue of the statute.   But in the present case the testatrix's intentions were not described when she bequeathed the residue 'of my estate and property,' which, so far, would unquestionably, under the statute, execute a power; she went on and specified that it was her estate and property 'of which I may die possessed or to which I may be entitled.'   She certainly was not possessed of this fund nor could she be entitled to any part of it except unpaid income and a proportionate part of income accrued, but not yet payable.   (Gen. Laws, C. 254, § 39).   The statute does not alter the meaning of the words 'possessed of' or 'entitled to' and they are just as inapplicable now as ever to property over which one has a power of disposition only.   *Matteson vs. Goddard,* 17 R. I. 299, 302."

The argument does not avail to make the bequest anything but a bequest of the residue of the property of the testatrix, and by the statute such a bequest operates as an execution of the power.

In the will of Mrs. Denny the bequest is of "all the rest, residue and remainder of my estate and property, of which I may die seized or possessed or to which I may be entitled, whether real or personal."   In the case cited, *Matteson* v. *Goddard,* the court said:   "When Mr. Goddard made his will, he evidently wished to give his wife the entire residue of his estate as it should exist at his death, and for that purpose beyond question, added the words 'of which I may be possessed *at the time of my death,*' after the words, 'all the rest and residue of my property, real, personal, and mixed, wherever situated and of whatever kind.'

"The words 'or over which I *at the time of my death* may have the power of testamentary disposition' follow the words 'of which I may be possessed at the time of my death,' referring back to the same antecedent, and may be naturally read as a supplemental or completer expression of the same purpose.   In each phrase the time to which it relates is a

prominent feature. It may be that the later phrase is unnecessary for such a purpose; and yet a man may *own* more than he *possesses*, if 'possess' is used in its primary signification, and hence the words 'or be then entitled to' are often added for greater surety; instead of which, in the residuary clause here, the phrase in question may be well regarded as having been used."

The bequest is clearly within the terms of the statute. No intent not to execute the power can be gathered from Mrs. Denny's will. By the first two clauses she disposes of specific property consisting of real estate in New York city and certain of the contents of her homestead. By the third and fourth clauses she disposes of other specific tangible property presumably also situated in New York city. It is only by the fifth and sixth clauses that she undertakes to dispose of any other property and she does so by general residuary bequests.

There remain therefore only these residuary clauses from which such intent is to be gathered. Certainly no intention not to exercise the power of appointment given her by her father's will appears from these clauses.

Our decision is that the will of Sophie B. D. Denny operated to execute the power given to her by the will of Jacob Dunnell. It is therefore unnecessary to consider the question argued as to the ownership of the fund in the event that the power was not exercised.

A decree may be presented in accordance with this opinion, in order that the same may be approved by this court and ordered entered in the Superior Court.

*James Tillinghast*, for complainant.

*Livingston Ham*, for Henry Dunnell, *et al.*

*Tillinghast & Collins*, for the Dennys.

*Coudert Brothers*, of counsel.