HORLICK, Trustee, Respondent, vs. SIDLEY, Appellant: SIDLEY and others, Executors, Respondents.

*March 12—June 26, 1942.*

For the appellant there were briefs by *Shaw, Muskat & Paulsen* of Milwaukee, attorneys, and *Sidley, McPherson, Austin & Burgess* of Chicago, Illinois, of counsel, and oral argument by *Martin R. Paulsen* and by *James F. Oates, Jr.,* of Chicago, Illinois.

For the respondent Alexander James Horlick there were briefs by *Miller, Mack & Fairchild* of Milwaukee, attorneys, and *Scott, MacLeish & Falk* of Chicago, Illinois, of counsel, and oral argument by *Bert Vandervelde* and *J. G. Hardgrove,* both of Milwaukee, and by *John E. MacLeish.*

For other respondents there was a brief by *Shea & Hoyt* of Milwaukee, attorneys for the executors of the will of William Horlick, Jr., and *Simmons, Walker, Wratten & Sporer* and *G. E. Smalley,* all of Racine, attorneys for the executors of the will of Mabel Horlick Sidley, and oral argument by *Ralph M. Hoyt* and *Charles F. Wratten.*

The following opinion was filed May 5, 1942:

FAIRCHILD, J. It is urged on behalf of William H. Sidley, the appellant, that he is entitled to that part of the undistributed one third of the net income allocable to the share of his mother, Mabel Horlick Sidley, which had been collected by the trustees prior to her death and also to that part of such undistributed one third of the net income which had accrued prior to but had not been collected until after her death. A similar claim is made in respect to income allocable to the share of William O. Horlick. This claim is based on the provision in the trust agreement that in the event of death of a beneficiary prior to the termination of the trust the net

income "which would have been paid to her [or him] if living" should be paid to her (or his) issue. The solution to this question must be found in the intent of the settlor. *Commercial Trust Co. v. Spiegelberg* (1934), 117 N. J. Eq. 171, 175 Atl. 164; affirmed (1936) "for the reasons expressed in the opinion of [the] vice-chancellor," 119 N. J. Eq. 376, 182 Atl. 875. The nature of the rights and the subject matter here involved as well as the express language of the trust instrument favor the interpretation given by the lower court. No specific periods were fixed by the trust instrument designating the times when income was to be distributed by the trustees, and although they were given no authority to accumulate or withhold income for any period of time, it was their practice not to distribute this money until some one of the beneficiaries had occasion to demand it when they would then pay over to each beneficiary an equal share of the income. Frequently the trustees had on hand a large amount of income so retained. The sums here involved consist of money that had been collected as income prior to the death of the beneficiaries in question and money that, although accrued prior to death, had not been collected until after such time. The specific items consist of bond interest. To avoid confusion of thought, it is well to point out here that two distinct problems are involved, one of apportionment, *i. e.,* of determining whether accruing income is to be divided, as measured by time, between the deceased primary beneficiary, or his or her estate, and the secondary beneficiary; the other of determining which beneficiary had title to the particular items of income collected or matured. Note (1940), 126 A. L. R. 12, 30–32. Only little doubt can be raised as to the latter problem. Counsel for appellant apparently concede that where the interests involved are those of one having a life interest and of one having a remainder interest ordinarily the former has a vested right to the income accrued or collected before death and the authorities support such rule. *Welch v. Apthorp* (1909), 203 Mass.

249, 89 N. E. 432, 27 L. R. A. (N. S.) 449; *Commercial Trust Co. v. Spiegelberg, supra; Davidson's Estate* (1926), 287 Pa. 354, 135 Atl. 130.   It is argued, however, that such rule does not apply for the reason that the primary beneficiaries did not have a life interest in the trust property but a defeasible interest, an unlimited ownership subject to being cut off by the happening of a specified event, namely, death within the fifteen-year period of the trust.   Neither reason, nor authority, however, support the result so claimed.

The reasons opposing appellant's claim are clearly stated by the New Jersey court in the *Spiegelberg Case, supra,* in the following language (pp. 174, 175) :

"By the first paragraph of the trust indenture, *supra,* the net income of the trust for and during the life of the settlor's wife, was given to her, absolutely and unqualifiedly, and its payment to her specifically enjoined upon the trustees.   That income was set aside as and became her absolute property. She could not legally be deprived of any part of it by and [sic] act, design or default on the part of the trustees.   Nor could the trustees, by merely neglecting or refusing to pay it to her in the manner directed by the settlor, convert all or any part of it into corpus or accumulations thereon, payable, upon her death, to the remainderman under the trust.

"To hold otherwise, and as contended for by the remaindermen—that income accrued, but not actually paid over, during the life of the life tenant reverted upon her death to the remaindermen as accumulations on corpus—would necessitate a construction whereby this outright gift to the settlor's wife would be qualified so as to include not that which he had specifically directed the trustees to pay her, but only that which they saw fit to actually pay her, during her lifetime.   It would require that settlor's clear and unambiguous language be judicially supplemented by words which he saw fit to exclude or omit therefrom.

"The inevitable result and effect of any such construction would be to enable the trustees by their mere withholding, intentionally or otherwise, payment of all or any part of the net income until after the life beneficiary's death to thereby

not only deprive the latter of that which the creator of the trust intended and specifically directed should absolutely be hers, but to even frustrate and defeat his very intent. A construction so harsh and casting such grave doubts upon the stability and security of trust settlements, and incidentally upon the settlor's power to dispose, as he sees fit, of that which is his own, should not, and will not, be adopted unless the language and tenure of the trust indenture admits of no other."

Granting that the interest of William H. Sidley is an executory interest operating to defeat the prior vested interest in the principal of the trust, it does not necessarily follow that it likewise operates to defeat such interest in the collected or accrued income. What distinguishes, for the purposes of appellant's argument, such income and income previously paid to the primary beneficiaries? The interest in the accrued and the collected income is a fully vested interest whatever may be the nature of the title to the principal and to the subsequently accruing income, and this vested interest is not subject to any defeasance. It is recognized that the Rhode Island case of *Rhode Island Hospital Trust Co. v. Noyes* (1904), 26 R. I. 323, 58 Atl. 999, reaches a contrary result to the position taken by appellant and counsel attempt to explain this case on the ground that "the important distinction, so far as concerns the disposition of accumulated and accrued income, between a life interest and a defeasibly vested interest in principal and income does not seem to have been pointed out to the Rhode Island court." Yet, as we have seen, no sound basis exists for holding that because the interest in the principal and the right to subsequent income may be subject to being divested it necessarily follows that the beneficiary's interest in the accrued and collected income is of the same nature, and common sense forbids such a result.

Similar reasons and rules apply to the obtaining of a like result to the problem of apportionment. The rule is stated

as follows in the Restatement of the Law of Trusts, pp. 697, 698, § 235:

"§ 235.   Except as otherwise provided by the terms of the trust, if property is held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary, income received by the trustee, other than rents, annuities and dividends on shares of stock, which did not accrue wholly within the designated period is apportionable. . . ."

The generally accepted rule, recognized in this state, is that income, though payable periodically, is apportionable between successive beneficiaries for the reason that interest is deemed to accrue from day to day. *Will of Barron* (1916), 163 Wis. 275, 283, 155 N. W. 1087; 4 Bogert, Trusts and Trustees (1935), p. 2377, § 816; 2 Perry, Trusts and Trustees (7th ed. 1929), pp. 956, 957, § 556c; 2 Scott, Trusts (1939), pp. 1289, 1290, 1327–1329, §§ 235, 238; note (1940), 126 A. L. R. 12, 33–36; and the rule applies to bond interest even if represented by coupons. *Kahn v. Wells Fargo Bank & Union Trust Co.* (1933) 137 Cal. App. (Supp.) 775, 27 Pac. (2d) 672; Restatement, Trusts, p. 698, § 235, comment *a;* 2 Scott, Trusts, p. 1289, § 235; note, 126 A. L. R. 12, 40–42.

In addition to these general rules, a proper construction of the language of the paragraph compels the conclusion reached by the trial court.   The clause has within it the words "from the time of the death of the said [named beneficiary]."   The trust instrument provides in the case of Mabel Sidley, as it does in the case of each of the other beneficiaries, that in the case of death the net income "which would have been paid to her [or him] if living" shall be paid "from the time of [her or his] death" to the successor beneficiary or beneficiaries. It is a matter of description that we are dealing with.   There were three incomes being considered by the creator of the trust.   He separates them and by the qualifying clause "which

would have been paid to her if living" restricts the income to that of the individual beneficiary spoken of as that income to be paid and distributed, and the time is fixed at the beneficiary's death. It is therefore that income only, not the income of any other beneficiary or the income previously accruing to Mabel Sidley while living which has been hers since it accrued and must therefore be part of her estate. It is the subsequent accruing income which the settlor has in his trust instrument designated as that to be "paid over, transferred and distributed" to the persons or person to whom the principal or one third of the trust estate would pass at the death of Mabel Sidley.

It would be an unnatural construction of the trust instrument to hold that the mere accidental fact that the beneficiary failed to demand or the trustees failed to turn over the accrued income should operate to change the course of its distribution. Upon its accrual during her life, this income belonged to Mabel Sidley and she had the right to regard it as her own. Mrs. Sidley certainly had acquired a vested interest in one third of the principal of the trust; her interest being of the positive nature that it was, reasonably and legally related the accrual to her estate so that it became a part thereof.

The circuit court ruled that William O. Horlick exercised the testamentary power of appointment by executing a last will and testament including a residuary clause reading:

"*Third:* I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed of whatever nature and wheresoever situate to my beloved father, William Horlick, and to my beloved mother, Arabella R. Horlick—share and share alike. In the event of the death of either my father or my mother, I give, devise and bequeath the share of such one as may die before me to the survivor. In the event of the death of both my father and mother before me I give, devise and bequeath the share of both to my brother, Alexander J. Horlick, and my sister, Mabelle Horlick Sidley, —share and share alike. In the event of the death of both

my father and my mother and either my brother or my sister before me, I give, devise and bequeath this share to my surviving brother or sister."

Appellant argues that because at common law the intention to execute a power of appointment must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation, and that because the record is devoid of any affirmative evidence that William O. Horlick intended to exercise the testamentary power, there was no exercise of the power. The will was drawn before he had the power but did not become effective until long after, as a will does not take effect until the death of the testator, and from then on it speaks for him. We need not enlarge upon the effect of the will here because there was a codicil to it executed at a time when William did have the power of appointment and knowing he had such power he made the following provision:

"I do hereby revoke my said will so far only as relates to the appointment of my said executors, and I do hereby constitute and appoint Bernard F. Magruder and G. E. Smalley to be executors thereof, in the stead or place of the said Bernard F. Magruder and Mortimer E. Walker, executors named in my said will.

"And I do hereby also direct and declare that my said will shall be read and construed so as to have the same effect and operation in every respect as if the names of the said new executors had been originally inserted therein, instead of the names of the former executors in every part of my said will in which their names occur.

"And I do hereby ratify and confirm my said will in every other respect."

We agree with the learned trial judge that under the holding of this court in the case of *Cawker v. Dreutzer* (1928), 197 Wis. 98, 221 N. W. 401, sec. 232.51, Stats., supplies the rule to be applied to the situation here presented. The vigorous contention on the part of appellant that the provisions of sec. 232.51 do not apply to powers of appointment over per-

sonal property is supported by an able argument, but the rule obtaining in this state is that expressed by the New York court in the case of *Cutting v. Cutting* (1881), 86 N. Y. 522, and followed in the *Cawker Case, supra.*

That earlier some doubt existed as to the correct rule is not to be denied; Judge FOLGER, who wrote the opinion in the *Cutting Case, supra,* said (pp. 544–547) :

"The power to dispose . . . affects personal estate also; and the claim is made by the plaintiff that the provisions of the Revised Statutes . . . do not take in personalty. The article in the Revised Statutes, 'of powers,' is found in chapter 1 part II, of that revision, and that chapter is entitled, 'of real property and of the nature, qualities and alienation of estates therein.' Furthermore it is found in title 2d of that chapter, which is entitled, 'of the nature and quality of estates in real property and the alienation thereof.' Furthermore the article itself declares that a power is an authority to do some act in relation to lands. (1 R. S. 732, § 74.) And the language of the article throughout is primarily applicable to real property and not to personal. (Id., §§ 75, 77, 78, 80, 87, 89, *et seq.*) Moreover, the revisers, in their notes by saying that if the first and second articles of the title are adopted, a new regulation of powers *in relation to lands* becomes indispensable, seem to have had primarily in purpose to change the law of powers as to real estate. (5 Edm. Stat. at Large, 325.) And like expressions, with like limitation in application, are frequent therein. On these considerations the claim is founded. On the other hand it is said, if that article does not treat of powers to deal with personal property, then there is no provision of law for the creation of a power to act upon personalty, as the seventy-third section of the article has abolished all powers as they existed at law, and made the provisions of the article the sole lawful authority for the creation of powers. But I hesitate to hold that this notion may prevail, by reason of adjudications upon like expressions in the Revised Statutes. . . . While I doubt and hesitate, however, my brethren are settled in their convictions and are unanimous. They hold that personal property is no more under the rule of English equity, since the Revised

Statutes, than is real estate. They think that it would be an ill-featured anomaly in the law that there should be two so inconsistent rules in the same body of law as that of English equity and that of the Revised Statutes, and that the revisers and the legislature intended that the rule which they declared in the article of powers should be as well the rule for the creation, construction and effect of powers concerning personal property. In support of this view, they say that the courts of justice have always endeavored to keep up an analogy between estates or interests in lands, and similar interests in personal property. . . . There is certainly much force in the position that one body of law should not declare a different rule for two kinds of property, when there is nothing in the nature of either kind of property, or in the nature and effect of the rule that calls for it. Clearly in the nature of things there is no reason why a gift or bequest of personal property, with a power of disposition, should not be measured by the same rule as a grant or devise of real estate with the same power. Nor is there cited or suggested any express provision of statute law that stands in the way of the application of the rule of the Revised Statutes to both kinds of property. . . . It is the duty of courts of justice to endeavor to preserve an analogy between estates and interests in land and the income thereof, and similar interests in personal property. . . ."

In the *Cawker Case, supra,* Mr. Justice CROWNHART referred to the hesitation of Judge FOLGER in indorsing the rule and stated (p. 131) : "The chief justice hesitated to agree with his associates in this respect, but yielded and the judgment was unanimous. So, here, we might hesitate to follow New York but for the fact that that opinion has evidently been accepted by the profession as the law since 1881, when it was given. However, we feel that the chief justice's final conclusion is supported by sound logic."

The English common-law rule of construction had long been the subject of criticism and has been overthrown by the courts in some jurisdictions in this country as failing to justify

its very purpose, namely, to ascertain the controlling element in the exercise of a power—the intent of the donee. As shown by Sugden in his Treatise of Powers (vol. 1 (2d Amer. ed. 1847), p. 288 *et seq.*, § 7), the courts have sought to distinguish cases in avoiding the early rule and have frequently pronounced such rule to be bad. The effect of the rule of strict construction is summarized by Sugden, 1 Powers, p. 315, § 7, par. 76: "In reviewing the cases in this section, it is impossible not to be struck with the number of instances where the intention has been defeated by the rule distinguishing power from property." In England this situation was remedied by 1 Vict., c. 26, providing that a general devise or bequest of real or personal property will operate as an execution of a general power unless an intention to the contrary appears in the will.

The Massachusetts court, without the aid of any statute, unhesitatingly refused to adopt the English rule in the case of *Amory v. Meredith* (1863), 7 Allen (89 Mass.), 397, saying (p. 400):

"We are aware of no decisions in this commonwealth, binding on us as an authority, which should compel us to adopt a rule of construction likely, in a majority of cases, to defeat the intention it is designed to ascertain and effectuate. Seeking for the intention of the testator, the rule of the English statute appears to us the wiser and safer rule; certainly when applied to cases like the one now under consideration, where the testatrix is dealing with property which had been her own, and of which she had the beneficial use, as well as the power of disposal."

So in New Hampshire the rule, although earlier recognized and even adopted, was subsequently not followed for the reason that such rule "defeats more often than it effectuates the intention of the appointer." *Emery v. Haven* (1893), 67 N. H. 503, 504, 35 Atl. 940.

No intent to the contrary appearing, a general residuary clause was held by the North Carolina court,[1] in *Johnston v. Knight* (1895), 117 N. C. 122, 23 S. E. 92, to operate as an execution of a power under the general rule as declared in Massachusetts.

Thus the course of the decisions in this country as well as the trend of legislation strengthen the position here taken that a general bequest or residuary clause will, even as to personal property, operate as an execution of a power in the absence of any expression to the contrary as provided in sec. 232.51, Stats. To maintain a distinction between real and personal property in this respect would lead to most unfortunate consequences. The very same words of a single clause would, were the object of the power real as well as personal, operate as an execution of the power over the one kind of property but fail as to the other. This result would render a bad rule worse.

Under the provisions of a statute such as sec. 232.51, it is clear that a will executed subsequent to the creation of a power and containing a general bequest or devise or a general residuary clause operates as a testamentary exercise of a general power of appointment. 3 Page, Wills (3d ed. 1941), pp. 908, 909, § 1331; *New York Life Ins. & T. Co. v. Livingston* (1892), 133 N. Y. 125, 30 N. E. 724; *Thompson v. Wanamaker's Trustee* (1920), 268 Pa. 203, 110 Atl. 770; *Rhode Island Hospital Trust Co. v. Dunnell* (1912), 34 R. I. 394, 83 Atl. 858.

The codicil to the will of William O. Horlick expressly ratified and confirmed his original will and it therefore operated to republish the will as of the date of the codicil. *Skinner*

---

[1] The rule in this state is now uncertain in view of later decisions: *Carraway v. Moseley* (1910), 152 N. C. 351, 67 S. E. 765; *Herring v. Williams* (1911), 158 N. C. 1, 73 S. E. 218. Cases relative to this problem of intent are collected in the following notes: (1910) 16 Ann. Cas. 203; (1924) 32 A. L. R. 1395; (1934) 91 A. L. R. 434; (1940) 127 A. L. R. 248.

*v. American Bible Society* (1896), 92 Wis. 209, 65 N. W. 1037; 2 Page, Wills, pp. 13, 15, 16, 24, §§ 545, 546, 551. It is therefore unnecessary to determine whether the original will operated to exercise the power of appointment as there is no difficulty in arriving at the conclusion that the codicil accomplished that result, the court being satisfied that there is no evidence of an intent either "expressly or by necessary implication" on the part of the testator "that the will shall not operate as an execution of the power."

September 25, 1936, the three children of the settlor, the primary beneficiaries under the trust, succeeded their father as joint trustees. The instrument of appointment provided:

"*Now, therefore, I,* the said William Horlick, trustee in said trust agreement named, do hereby appoint my children [naming them] and the survivors or survivor of them, successor trustees under said trust agreement."

The executors of the wills of Mabel H. Sidley and William O. Horlick contend that upon the succession of the children of the settlor to the trusteeship the trust terminated under the doctrine of merger. The trial judge ruled that such doctrine was inapplicable for the reasons that the application of such doctrine would be contrary to the intent of the settlor and for the further reason that the doctrine did not apply to the situation here where several trustees were appointed. The circuit judge stated in his opinion:

"It was clearly the intention of the settlor that the trust should continue until the trustees in the proper exercise of discretion should terminate it either as to the whole or any part of the share of one or two or all of the beneficiaries and the termination of the trust in any other manner than by the exercise of such discretion would, as heretofore indicated, be contrary to the intention of the settlor in creating the trust."

We agree with the conclusion of the trial judge. The doctrine of merger in its application to trust estates has led to no little confusion, but an analysis of the nature and

reasons for this rule in relation to trusts supports the judgment of the lower court. In respect to the simplest situation, that of a sole beneficiary and a sole trustee, various theories operate to effect a merger, the most obvious, if not the most fundamental, reason being that such a situation is contrary to the very nature of a trust. *Danforth v. Oshkosh* (1903), 119 Wis. 262, 276, 97 N. W. 258; 1 Perry, Trusts and Trustees, pp. 10, 11, § 13; 1 and 3 Scott, Trusts, pp. 519 *et seq.,* and 1876 *et seq.,* §§ 99, 341.

Where, as here, the trustees and the beneficiaries are more than one, several grounds exist for refusing to hold that the trust has been extinguished by merger. This doctrine applies only when the titles to the two interests are coextensive. 1 Bogert, Trusts and Trustees, p. 383, § 129; 1 Perry, Trusts and Trustees, p. 11, § 13. The title of the settlor's children as trustees was joint, their title as beneficiaries was several. The interests of the trustees and the beneficiaries in this case being different both as to quantity and quality of title no merger took place. *Johnson v. Muller* (1939), 149 Kan. 128, 133, 134, 86 Pac. (2d) 569; *Sturgis v. Citizens Nat. Bank* (1927), 152 Md. 654, 137 Atl. 378; 1 Bogert, Trusts and Trustees, p. 383, § 129; Restatement, Trusts, pp. 269, 270, 294, 1051, §§ 99 (4), 115 (4), 341, comment *h.* Nor should the doctrine be applied under the circumstances of this case since it would frustrate the clear intent of the settlor. *Will of Fitton* (1935), 218 Wis. 63, 66, 67, 259 N. W. 718; 1 Bogert, Trusts and Trustees, p. 383, § 129; 1 Scott, Trusts, pp. 533 *et seq.,* § 99.5. That the trust in question was to continue either for the full period designated in the trust instrument or until terminated by *joint* action on the part of the several trustees seems clear from the terms of the trust agreement as well as the instrument designating the successor trustees. In the first instrument provision is made for contingent beneficiaries in the event of the death of any of the primary beneficiaries before the expiration of the trust, and in the appoint-

ment of successors, as we have seen, there is manifested an intention that the trust continue until by the joint action of the trustees *in the exercise of their discretion* the trust be terminated either in whole or in part.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 26, 1942.