**D. Harold BYRD et al., Appellants,**

v.

**William W. CARUTH, Jr., et al., Appellees.**

No. 8246.

Court of Civil Appeals of Texas, Texarkana.

Dec. 31, 1974.

Rehearing Denied Feb. 11, 1975.

Bruce W. Bowman, Jr., Turner, Rodgers, Sailers, Jordan & Calloway, Dallas, for appellants.

Gordon H. Rowe, Jr., Gardere, Porter & DeHay, Ralph Hartman, C. Sidney McClain, Dallas, for appellees.

CHADICK, Chief Justice.

This action was brought under the provisions of Vernon's Ann.Tex.Rev.Civ.Stat. Ann. art. 2524–1 (Uniform Declaratory Judgment Act) for judgment declaring the estate of Mattie Caruth Byrd, deceased, " . . . owns and is entitled to recover all of the income from the Mattie Caruth Byrd Trust which accrued up to the date of the death of Mattie Caruth Byrd . . . " and for related purposes including general legal and equitable relief.

Plaintiffs in the trial court and appellants here are the Independent Co–Executors of the will of Mattie Caruth Byrd, deceased, and the Attorney General of the State of Texas.[1]  Defendants below and appellees here are the Co-Trustees of the Mattie Caruth Byrd Trust and its present beneficiaries D. Harold Byrd, Jr., and Caruth Clark Byrd.  In the trial court all parties, plaintiff and defendant, moved for summary judgment and the trial court granted the motions of the defendants.

The probated will of William W. Caruth, Sr., deceased, created the Mattie Caruth Byrd Trust.  In most instances hereafter William W. Caruth, Sr., this testamentary instrument and this fiduciary estate will be referred to simply as the testator, the will and the trust.  The purpose and design of Section V(c) of the will[2] was to govern, after the death of Earle Clark Caruth, disposition of the entire net trust income by: (1) payment thereof to Mattie Caruth Byrd during her lifetime; (2a) use and employment of so much thereof, after Mattie Caruth Byrd's death, as the trustees might see fit for the education and support of Mattie Caruth Byrd's children; (2b) accumulation for addition to trust corpus of income not employed by the trustees in educating and supporting Mattie Caruth Byrd's children.  The purpose and design of Section V(e) of the will[3] was to govern, after the death of the survivor of William W. Caruth, Sr., Earle Clark Caruth and Mattie Caruth Byrd, the dissolution of the Mattie Caruth Byrd Trust and distribution of its corpus and accumulated income.  The only section in the will providing for the accumulation of trust income is that found in Section V(c) wherein disposition is made of trust income accruing after Mattie Caruth Byrd's death but not used in the education and support of her children.  It follows that such accumulation of trust income is the only accumulation to which Section V(e) can refer.  The trial court reached a contrary conclusion.  The appellees' contention in support of the trial court judgment will be examined and tested.

As the parties' briefs are understood they find no fault with the statement in Bogert, The Law of Trusts and Trustees, Second Edition, Sec. 818 that:

" . . . if trust income has been collected during the tenancy of a particular cestui, but not paid over to him, and he later dies, the income should be paid to his representative, no matter what the type or source of the income, unless the settlor has indicated a contrary intent."

1.  The Attorney General's intervention, joinder, and pleading indicate that a charitable trust created by the will of Mattie Caruth Byrd might be affected by judgment herein. The will is not in the record on file.

2.  "*Section V(c)*.  Upon the death of my wife,. EARLE CLARK CARUTH, the entire net income of the WILLIAM W. CARUTH, JR. TRUST shall be paid to my son, WILLIAM W. CARUTH, JR., so long as he shall live and, upon the death of my wife, the trustees of the MATTIE CARUTH BYRD TRUST shall pay to my daughter, MATTIE CARUTH BYRD, so long as she lives, the entire net income from the MATTIE CARUTH BYRD TRUST.  Should either my son, WILLIAM W. CARUTH, JR., or my daughter, MATTIE CARUTH BYRD, die, the trustees of the deceased child's trust shall use and employ so much of the net income of the deceased child's trust as the trustees see fit to the maintenance, and education and support of the children, collectively, of such deceased child of mine.  Any income not so employed shall be accumulated and added to the corpus of the particular trust."

3.  "*Section V.(e)*.  Upon the death of the survivor of myself, wife, EARLE CLARK CARUTH, and my daughter, MATTIE CARUTH BYRD, the MATTIE CARUTH BYRD TRUST shall terminate, and the corpus thereof, together with any income accumulated thereon, shall be distributed, share and share alike, unto the children of my daughter, MATTIE CARUTH BYRD, and the descendants of any deceased child of hers, per stirpes;  provided, however, . . ."

as well as similar statements in Scott, The Law of Trusts, Third Edition, Section 235a saying:

"Where property is given in trust to pay the income to a beneficiary for life and on his death to pay the principal to others, such income as had been received by the Trustee or has accrued prior to the death of the life beneficiary, and has not been paid to him is payable to his personal representative unless it is otherwise provided by terms of the Trust."

Appellees' reason *a posteriori,* that is, reason from effect to cause, that Sections V(c), V(e), VI (spendthrift), as well as the will in its entirety, produces the inescapable conclusion that the testator's general design and purpose was for his estate to benefit only those designated, that is, his wife, children, grandchildren and their descendants to the exclusion of strangers or assignees and creditors of those designated to benefit. Also, appellees reason that the testator must have anticipated the net trust income in full could not be paid to Mattie Caruth Byrd as it accrued and that at her death the trustees necessarily would have some part of the trust income on hand.[4]

Conceding the paramount intent of the will was to benefit only those designated by the testator, such general intent standing alone does not qualify or limit the express and specific gift of the entire net trust income to Mattie Caruth Byrd during her lifetime. The right to such income vested absolutely. See Republic National Bank of Dallas v. Fredericks, 155 Tex. 79, 283 S.W.2d 39 (1955); Roberts v. Drake, 380 S.W.2d 657 (Tex.Civ.App. Dallas 1964, writ ref'd, n. r. e.); 61 Tex.Jur.2d Wills,

Sec. 134. The will's language and trust provisions express no intent that the income of the trust actually paid to Mattie Caruth Byrd during her lifetime would, under any contingency or circumstance, revert to the trust corpus. The language of the gift is so clear and specific that the appellees' briefs tacitly agree that trust income actually paid to Mattie Caruth Byrd vested in her indefeasibly. Once the trust income was paid to her, Mattie Caruth Byrd was free to use it as "those who husbanded the golden grain" or as "those who flung it to the winds like rain" or, perhaps, devote it to public charity. In the presence of the testator's unquestioned and specific intent to place considerable wealth in the hands of his daughter to be used and disposed of at her sole discretion, it would be a distortion of logic and amount to an addition to or perversion of the meaning of the language used to conclude that by the general purpose and design of his will the testator implied an intent to draw back a part of the gift made if the trustees were unable or failed to pay out the trust's net income to Mattie Caruth Byrd during her lifetime.

Further, does the language of Section V(e) governing termination of the trust and distribution of the trust corpus, "together with any income accumulated thereon" in context with the testator's overall intent to benefit only those designated in his will express or imply that the testator meant to recapture and pass on to others that part of the net income of the trust that the trustees failed to pay to Mattie Caruth Byrd during her lifetime? The will must be construed, if possible, in a manner that effectuates all its provisions

4. Reasonably, the testator would have anticipated a faithful performance of the trust and that net income would be paid to Mattie Caruth Byrd during her lifetime as promptly as good business and accounting procedures would allow. Thus, the testator would have anticipated that net income in the hands of the trustees would be as minimal as circumstances would permit. The record does not show the value of the trust estate or the income therefrom but a 1967 judgment introduced as an exhibit shows that nonproductive assets of the trust were of such value that if productive at the rate of four per cent per annum income of $249,464.65 would have been produced in the period January 1, 1959 through December 31, 1966.

as well as its general purpose. Estes v. Estes, 267 S.W. 709 (Tex.Comm'n.App. 1924); Republic National Bank of Dallas v. Fredericks, supra, and Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579 (1955). It has been demonstrated that the overall purpose and design of the will, standing alone, did not imply a purpose to recapture or cause to revert income payable to Mattie Caruth Byrd before her death. It has also been pointed out that the only express provision in the will for accumulation of trust income is found in Section V(c). Section V(e) contains no direction for the accumulation of income and only mentions accumulation in connection with distribution of all trust assets. Necessarily, the reference in Section V(e) to accumulated income refers to anticipated and expressly authorized accumulation, that is, the income accumulated pursuant to Section V(c). The examination of Section V(c) previously made shows that accumulation was anticipated and authorized only in connection with income produced by the trust after the death of Mattie Caruth Byrd. The answer to the question at the beginning of this paragraph must be that the will, when properly construed, did not contain an express or implied intent on the part of the testator to cause a reversion or to recapture and pass on to others any part of the net income of the trust that the trustee failed to pay Mattie Caruth Byrd during her lifetime.

The conclusion last stated cannot be supported by cases in point from this or any other jurisdiction. However, the following cases are persuasive and generally support the views stated and disposition here made. The South Carolina National Bank of Charleston v. Arrington, 252 S.C. 1, 165 S. E.2d 77 (1968); Estate of Kenny, 393 Pa. 30, 141 A.2d 839 (1958); Commercial Trust Co. v. Spiegelberg, 175 A. 164 (Ct. of Chancery New Jersey 1934); and Horlick v. Sidley, 241 Wis. 81, 3 N.W.2d 710

(1942). On the other hand the appellees have cited Wyckoff v. Garrison, 237 A.2d 139 (Ct. of Chancery Delaware 1967); Rhode Island Hospital Trust Co. v. Otis, 77 R.I. 296, 75 A.2d 210 (1950); Loring v. Cotter, 339 Mass. 689, 162 N.E.2d 294 (1959); and In re Richardson's Estate, 213 Cal.App.2d 229, 28 Cal.Rptr. 599 (California Dist.Ct.App.1963), which, together with plausible argument present strong support for the trial court judgment; but for the reasons discussed appellee's contentions are overruled.

■ Mattie Caruth Byrd was one of the trustees of the trust prior to and at the time of her death. Appellees suggest that she acquiesced in the failure of the trustees to distribute the trust income to her during her lifetime and thereby waived the right of distribution. The appellees did not plead waiver as an affirmative defense as required by Tex.R.Civ.P.Ann. 94. Waiver was not set out as a ground for summary judgment nor was proof made that Mattie Caruth Byrd voluntarily relinquished a known right in this respect. Waiver cannot be now interposed as a defense. Avinger v. Campbell, 499 S.W.2d 698 (Tex.Civ.App. Dallas 1973), aff'd per curiam 505 S.W.2d 788 (Tex.1974).

The trial court pleadings, and prayer for relief therein, suggest that resort to the trial court's fact finding process might be necessary to settle issues raised thereby. With the record in such condition it is in the interest of justice that the judgment of the trial court be reversed and the case remanded with instructions that judgment be entered consistent with this opinion (declaring that the estate of Mattie Caruth Byrd, Deceased, owns and is entitled to recover the net income of the trust that "accrued up to the time of her death") and to determine material issues, if any, presented by pleadings but not reached in the original trial. It is so ordered.

## ON MOTION FOR REHEARING

■ Originally reversal and remand with instructions was ordered, it appearing that both plaintiffs and defendants filed motions for summary judgment in the trial court. See Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (1958); Gulf, Colorado & Santa Fe Railway Company v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1958) and Texas Rules of Civil Procedure Ann. 434. On further consideration it is concluded that a general remand should have been ordered. The pleadings and stipulations on file recognize that there are unresolved issues of fact relevant to allocation of income from unproductive assets to the Estate of Mattie Caruth Byrd under the provisions of the Texas Trust Act, Art. 7425b–35. Under this record a judgment for the plaintiffs, if summarily granted in the trial court, would necessarily have been confined to a construction of the will and its pertinent trust provision, a partial summary judgment at most. In Ackerman v. Vordenbaum, 403 S.W.2d 362 (Tex.1966) Judge Norvell said:

"The safer rule is one restricting the Tobin-Garcia doctrine to its factual situation and that disclosed in Gulf, Colorado & Santa Fe Ry. Co. v. McBride, that is, to cases in which motions for summary judgment have been filed by all the real parties at interest and the appeal is prosecuted from a judgment granting one or more of them."

In the instant case only a partial summary judgment might have been granted the plaintiffs in the trial court; such circumstance distinguishes it from McBride and similar cases. Though the change in the remand order is deemed of no practical consequence (see 61 Tex.Jur.2d, Wills, § 218), it is proper and appellees' motions for rehearing are sustained in part. The judgment of the trial court is reversed and the case remanded for new trial but the motions for rehearing are overruled in all other particulars.